UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COVES OF THE HIGHLAND COMMUNITY DEVELOPMENT DISTRICT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-7251** |
| **MCGLINCHEY STAFFORD, P.L.L.C.** | **SECTION: "N"(4)** |

## ORDER

Before the Court is **Rule 15 Motion to Amend and Supplement Complaint (R. Doc. 102)**, filed by Plaintiff, Coves of the Highland Community Development District ("Plaintiff" or "District"), seeking leave of the Court to file a second amending and supplemental complaint against Defendant, McGlinchey Stafford, P.L.L.C. ("Defendant" or "McGlinchey"). The Defendant opposes the Motion. (R. Doc. 107.) The motion was heard on the briefs on Wednesday, August 10, 2011.

### I.     Factual and Procedural Background

The Plaintiff is a political subdivision and community development district, established for the purpose of financing and managing The Coves of the Highland, a planned residential community located in Tangipahoa Parish, Louisiana. (R. Doc. 33, ¶¶ 8, 13.) On November 10, 2009, the Plaintiff filed suit against Breazeale, Sachse & Wilson, L.L.P. ("Breazeale") and the Defendant to recover damages allegedly arising from the Defendants' securities fraud, professional malpractice,

negligence, and negligent misrepresentation.  (R. Doc. 1, Claims for Relief.)

The Plaintiff alleges that in March 2006, MGD Partners, L.L.C. ("MGD"), a Louisiana developer, purchased approximately 324 acres of real property in Tangipahoa Parish, Louisiana, for development of The Coves of the Highland.  (R. Doc. 33, ¶ 13.)  Soon thereafter, MGD engaged the Defendant, through its partner J. Patrick Beauchamp, to serve as counsel for MGD and the District in connection with its organization, bond issuance, and compliance activities for the real estate development.[1]  (R. Doc. 33, ¶¶ 1, 19-20, 25.)  The Plaintiff alleges that the Defendant verbally promised to "guide and oversee the entire process" and "to ensure that all necessary work was performed for the project . . ."  (R. Doc. 33, ¶ 2.)  The Plaintiff alleges that it later signed an engagement letter for the purpose of retaining the Defendant to establish the District and represent the District in connection with its organization, bond issuance, and compliance activities for the real estate development.  (R. Doc. 33, ¶¶ 19-20.)  On November 16, 2006, the District Board issued $7,695,000.00 in bonds.  (R. Doc. 33, ¶ 55.)  By the spring of 2009, the Plaintiff had laid out 264 home lots, installed streets, street lights, sewer and water lines, eight acres of ponds, and a one acre sewage plant.  (R. Doc. 33, ¶ 59.)

On March 9, 2009, the U.S. Army Corps of Engineers (the "Corps") issued a public notice in which it revealed that the Plaintiff's development property had been used as a bombing, rocket, and gunnery range, and was the subject of an active investigation by the Corps.  (R. Doc. 33, ¶¶ 71-73.)  On April 23, 2009, the Tangipahoa Parish Engineer notified MGD that no further permits or approvals would be issued by the Parish for the development of the Plaintiff's property until the risk of unexploded ordinance and contamination had been fully investigated and remediated.  (R. Doc.

---

[1] The parties dispute as to whether the Defendant served as bond counsel, underwriter counsel, and/or counsel for the organization and establishment of the District.

2

33, ¶ 74.)  As a result, the Plaintiff alleges it has been unable to further develop the property or sell lots on the property, and thus has defaulted on its issued bonds.  (R. Doc. 33, ¶ 76.)

The Plaintiff alleges that because the Defendant was acting as the Plaintiff's counsel in the bond issuance, the Defendant had a duty to conduct a reasonable investigation into the environmental issues that might delay or prevent the development.  (R. Doc. 33, Claims for Relief.)  The Plaintiff further alleges that had the Defendant performed a basic environmental assessment, it would have discovered that the development project site lays within the bounds of a historic bombing range.  (R. Doc. 33, ¶ 7.)

In January 2010, both Breazeale and Defendant filed motions to dismiss the Original Complaint.  (R. Doc. 12, 14.)  On April 7, 2010, the District Court (J. Engelhardt) granted Breazeale's motion to dismiss without leave to amend, and granted the Defendant's motion to dismiss with leave to file an amended complaint within thirty days. (R. Doc. 32.)

On May 7, 2010, the Plaintiff filed an Amended Complaint against the Defendant.[2] (R. Doc. 33.)  On June 30, 2010, the Defendant filed a motion to dismiss the Plaintiff's Amended Complaint. On October 6, 2010, the District Court (J. Engelhardt) heard oral argument on the Defendant's motion to dismiss the Plaintiff's Amended Complaint.  (R. Doc. 45).  At the conclusion of that hearing, the Court granted the Defendant's motion in part (as to the Private Securities Litigation Reform Act claim), and took the Plaintiff's state law claims under submission.  (R. Doc. 87.)  The Court later ordered that the remainder of the Defendant's motion to dismiss (relating to the state law claims) was denied in part and granted in part, concluding that the Plaintiff had stated state law

---

[2] On June 8, 2010, the case was consolidated with *MGD Partners, LLC et al. v. First American Title Insurance Company*, Civil Action No. 10-1437. (R. Doc. 34.)  On August 27, 2010, Civil Action No. 10-1437 was severed from this case.  (R. Doc. 78.)

claims upon which relief may be granted, but that any alleged tort which occurred prior to November 10, 2006 is barred by preemption, and cannot be relied upon by the Plaintiff as the basis for liability. (R. Doc. 88.)

As to the instant motion, the Plaintiff seeks leave of Court to file a Second Amending and Supplemental Complaint against the Defendant. The Plaintiff alleges that on July 11, 2011, it discovered new information as a result of its deposition of Mr. Beauchamp, a partner with McGlinchey Stafford, P.L.L.C.[3]

The Plaintiff contends that during Mr. Beauchamp's deposition, Mr. Beauchamp confirmed that he (1) did not provide any legal advice concerning environmental issues to the Plaintiff; (2) did not ask about or discuss whether a Phase I Environmental Study had been completed; (3) made handwritten edits to the Plaintiff's draft bond offering memorandum; but (4) overlooked the section of the memorandum that expressly stated that the developer, MGD, had conducted a Phase I Environmental Study. Because the engagement letter drawn by Mr. Beauchamp expressly stated that he would review the Plaintiff's bond offering memorandum, the Plaintiff seeks to amend the complaint to include the evidence acquired during Mr. Beauchamp's deposition in its breach of contract and malpractice claims. Specifically, the Plaintiff seeks to amend its claims to allege that the Defendant breached its contract with the Plaintiff when it failed to conduct a reasonable investigation into the environmental issues that might delay or prevent the development, and to expressly advise the Plaintiff that its bond offering memorandum contained a declaration that the developer, MGD, had conducted a Phase I Environmental Study, when it had not.

---

[3] The Plaintiff also claims that it discovered new information through discovery in a related case, *SCB Diversified Municipal Portfolio, et al. v. Crews & Associates, Inc., et al.*, Civil Action No. 09-7351. However, the Plaintiff fails to state what new information was discovered through discovery in that case.

Under the Scheduling Order, the deadline to file amendments to pleadings was January 10, 2011. The Defendant opposes the motion. (R. Doc. 107.)

## II.    Standard of Review

Federal Rule of Civil Procedure 15(a), which governs the amendment of pleadings, provides that leave to amend pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a)(2). This, and other federal rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Thus, Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). Furthermore, "this 'policy' is strongest when the motion challenged is the first motion to amend." *Thompson v. New York Life Ins. Co.*, 644 F.2d 439, 444 (5th Cir. 1981). Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so. *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). Thus, permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. *Thompson*, 644 F.2d at 444.

However, leave to amend is by no means automatic. *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). The decision to grant or deny a motion for leave to amend lies within the sound discretion of the trial court. *Id.* In exercising its discretion, the trial court may consider such factors as (1) undue delay, bad faith, or dilatory motive on the part of the movant; (2) repeated failure to cure deficiencies by amendments previously allowed; (3) undue prejudice to the opposing party by virtue of allowance of the amendment; and (4) futility of the

amendment. *Gregory v Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981). Leave to amend should be denied when doing so is required for fairness to the party opposing the motion for leave to amend. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 28 L. Ed. 2d 77, 91 S. Ct. 795 (1971).

However, Rule 15(a) must be construed in conjunction with Rule 16(b), which provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). The Fifth Circuit has held that "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters., L.L.C. v. South Trust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003). This necessary examination renders the Rule 15 inquiry "secondary." *Id.* at 536, n.4.

To demonstrate good cause, the movant must show that "the deadlines cannot be reasonably met despite the diligence of the party needing the extensions." *Id.* at 535. The court considers four factors: (1) the explanation for the failure to timely move for leave to amend; (2) importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* at 536.

### III.     Analysis

#### A.     Rule 16(b)(4)

According to the Court's December 10, 2010 Scheduling Order: "[a]mendments to pleadings, third-party actions, cross- claims and counter-claims shall be filed no later than January 10, 2011 (30 days from the date of the Preliminary Conference)." (R. Doc. 93.) The Plaintiff filed the instant motion on July 20, 2011. (R. Doc. 102.) Because the Plaintiff's motion was filed after the January

10, 2011 deadline, the Plaintiff must show good cause exists to modify the scheduling order prior to this Court granting leave to amend. *See S&W Enters.*, 315 F.3d at 536. Only upon the Plaintiff's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to this Court's decision to grant or deny leave. *Id.*

### 1. The Plaintiff's Explanation for Failure to Timely Move for Leave to Amend

The Plaintiff claims that it attempted to schedule Mr. Beauchamp's deposition several times, but that it was continued because Mr. Beauchamp and his attorney, Mr. Harry Rosenberg, were unavailable prior to July 11, 2011. The Plaintiff also contends that "extensive motion practice" in this case prevented it from scheduling Mr. Beauchamp's deposition prior to July 11, 2011. Thus, the Plaintiff argues it could not meet the deadline for the amendment of pleadings.

The Defendant argues that the evidence obtained during Mr. Beauchamp's deposition was not newly discovered evidence. The Defendant contends that in April 2011, it propounded interrogatories to the Plaintiff in which it asked the following:

> [s]tate with particularity the specific acts and/or omissions [the Plaintiff] contends McGlinchey took or failed to take that serves as the basis of Your Second, Third, and Fifth Claims of Relief in the Amended Complaint, as limited by the Court's Minute Order (Rec. Doc. 87), dated October 6, 2010, and its Order and Reasons (Rec. Doc. 88), dated October 21, 2010.

(R. Doc. 107-1, p. 6.) In response, the Plaintiff stated:

> Pat Beauchamp had the duty and was obligated to scrutinize any contract which he advised his clients to execute, and was required to disclose the full import of the instrument and the possible consequences that may arise upon execution of it. *See Ramp v. St Paul Fire & Marine Ins. Co.*, 269 So. 2d 239.
>
> Mr Beauchamp participated in the drafting or revision of the preliminary limited offering memorandum and limited offering memorandum. He was aware that an early draft contained a representation that an Environmental Phase 1 study had been performed and that no adverse information was discovered or reported. He learned

7

> that no such study had been performed and the representation was removed in the final PLOM and LOM but, a reference to an Environmental Phase 1 was left in the final PLOM and LOM.  Mr. Beauchamp advised Mr. Bodin to sign the PLOM and LOM without advising him or anyone else associated with MGD or the Coves that the reference to an Environmental study was made in the documents.  He did not advise MGD, its members or any director of the Coves that a representation that an Environmental Phase 1 had been done.  Indeed, he should have disclosed in the PLOM and LOM that in fact no such study had been perform on the property.
>
> The failure to have any discussion with the members of MGD and/or the directors of the Coves regarding an Environmental Phase 1 study and import in connections with the bond offering constitutes legal malpractice.
>
> Mr. Beauchamp should have advised the members of MGD and the directors of the Coves that an Environmental Phase 1 study should have been performed to protect against unknown conditions associated with the property that may preclude the development or adversely affect the economics of the project and the ability to meet the obligations undertaken in connection with the bonds and other debt.

(R. Doc. 107-1, p. 6.)  The Defendant contends that the Plaintiff's response confirms that the Plaintiff was aware of the alleged "newly discovered" evidence in April 2011, at the latest.  Thus, the Plaintiff has failed to show good cause for  waiting seven (7) months to file a motion for leave to amend.

The Defendant further argues that, despite the Plaintiff's contention, there has not been "extensive" motion practice. The Defendant contends that motion practice in this case has consisted of a motion to dismiss the initial Complaint, and a subsequent motion to dismiss the Plaintiff's Amended Complaint, all of which occurred before the Court issued its Scheduling Order.  The Defendant further contends that following the Scheduling Order, only three (3) motions have been filed, two (2) of which were consent motions to extend deadlines under the Scheduling Order.

The Court concludes that the Plaintiff was aware of the evidence obtained in Mr. Beauchamp's deposition in April 2011.  In its April 7, 2011 responses to the interrogatories propounded to it by the Defendant, the Plaintiff stated that Mr. Beauchamp committed legal

malpractice when he (1) did not advise the Plaintiff that its bond offering memorandum referenced the Environmental Phase 1 study; (2) did not advise the Plaintiff that this reference to an Environmental Phase 1 study amounted to a representation that an Environmental Phase 1 study had been performed; (3) did not disclose to the Plaintiff that an Environmental Phase 1 study had not been completed; (4) did not remove reference to an Environmental Phase 1 study from the Plaintiff's bond offering memorandum; and (5) did not advise the Plaintiff that an Environmental Phase 1 study should have been performed to protect against unknown conditions associated with the property that may delay the development or affect the Plaintiff's ability to meet its debt obligations. The Plaintiff also stated that Mr. Beauchamp had a "duty" to evaluate the Plaintiff's bond offering memorandum, disclose the terms of the memorandum, and advise the Plaintiff about the possible consequences of the memorandum.

The Plaintiff's April 7, 2011 responses are substantially similar to the facts and allegations it now seeks leave to add to its Amended Complaint. Thus, the Court concludes the Plaintiff was aware of the information it alleges it discovered as a result of Mr. Beauchamp's deposition in April 2011, at the latest.

The Court also finds the Plaintiff's argument that "extensive motion practice" prevented it from filing its motion for leave until July 2011 unconvincing. From the date this lawsuit was filed until the Court's Scheduling Order was issued, only five (5) dispositive motions were filed.[4] Following the Court's Scheduling Order, no dispositive motions were filed. Attorneys have a duty to manage their workload and cases diligently. The Court fails to see how five (5) dispositive

---

[4] *See* Motion to Dismiss by Breazeale, Sachse & Wilson, LLP (R. Doc. 12); McGlinchey Stafford PLLC's Motion to Dismiss (R. Doc. 14); Request for Clerk's Entry of Default Pursuant to Fed.R.Civ.P. 55(a) (R. Doc. 41); McGlinchey Stafford PLLC's Motion to Dismiss the Amended Complaint (R. Doc. 45);and McGlinchey Stafford PLLC's Motion to Strike and Motion for Sanctions Pursuant to 28 U.S.C. § 1927 (R. Doc. 47).

motions over one (1) year, eight (8) months, and ten (10) days amounts to "extensive motion practice", or explains the Plaintiff's failure to timely move for leave to amend. Thus, this factor weighs against a finding of good cause.

### 2. The Importance of the Amendment

The Plaintiff fails to present any argument as to why its proposed amendment is important. Instead, the Plaintiff asserts that the purpose of the amendment is to simplify the issues by clarifying Plaintiff's claims for breach of contract and malpractice so that the trial will be shorter and more efficient. The Plaintiff also contends that amending the Amended Complaint will heighten the likelihood of pre-trial resolution of the case.

The Defendant argues that the Plaintiff's proposed amendment is not important. The Defendant contends that the allegations in the proposed second amended complaint are based upon acts and/or omissions that allegedly took place before November 10, 2006. Thus, these new allegations are barred by the Court's previous order.

In October 2010, the Court issued an Order concluding that any alleged tort, including any alleged misrepresentation, error, omission, or misstatement of fact upon which Plaintiff relied to its detriment, which occurred prior to November 10, 2006, is barred by preemption, and cannot be relied upon by plaintiff as the basis for liability. (R. Doc. 88.) Here, the Plaintiff's proposed second amended complaint is comprised of allegations that are based on communications, and alleged acts, errors, and omissions that occurred prior to November 10, 2006.[5] Because the Court already ordered that any alleged tort which occurred prior to November 10, 2006 is barred by preemption, the Plaintiff cannot rely on these communications, and alleged acts, errors, and omissions as the basis

---

[5] *See e.g.*, R. Doc. 102-3, ¶ 120 (June 28, 2006); ¶¶ 123-125 (October 25, 2006); ¶¶ 126, 127 (November 1, 2006); ¶ 129 (November 8, 2006).

for liability. Thus, the Plaintiff has failed to demonstrate the importance of its proposed amendment.

Further, when the Court compares the allegations in the Amended Complaint with the allegations in the proposed second amended complaint, it is clear that the proposed second amended complaint does nothing more than clarify the Plaintiff's current allegations. For example,

| **Amended Complaint:** | **Proposed Second Amended Complaint:** |
|---|---|
| . . . McGlinchey never directed or advised either MGD principals or District representatives to investigate whether environmental risks or contamination existed for the Property, or whether any "material adverse effect" from such conditions might impact the Project. McGlinchey prepared the Development Agreement and directed and advised District Board members to execute it, but never advised the District that the absence of independent investigation respecting environmental conditions could create risks for the District. Moreover, McGlinchey never advised that, in the absence of a reasonable investigation, neither McGlinchey nor the District could reasonable conclude that material adverse effects from environmental conditions <u>did</u> <u>not</u> <u>exist</u>. Furthermore, McGlinchey never conducted any independent investigation of its own respecting material adverse effects which might exist from environmental conditions at the Property, and never advised MGD or the District that such investigation was either appropriate or necessary for the process of fully evaluating and preparing a bond offering for the Project. | Neither Patrick Beauchamp nor anyone at McGlinchey Stafford, PLLC made any inquiry with the Coves or the Developer, MGD, as to whether or not a Phase I Environmental Site Assessment had been preformed. Indeed, McGlinchey failed to have any discussion with the developer or the Coves regarding environmental laws and the customary practice of obtaining a Phase I Environmental Site Assessment in connection with a commercial real estate transaction such as the Coves of the Highland Community Development District. . . . The McGlinchey firm breached its duty and obligation to the Plaintiff by failing to advise the client on environmental aspects of the project, to recommend and obtain a Phase I Environmental Site Assessment study and to otherwise adequately represent the client, not only as bond counsel but as district counsel. . . . Defendant breached its duty to plaintiff to cause the PLOM to expressly state that no Phase 1 Environmental study of the property had been performed, thereby exposing plaintiff to claims by the purchasers of the bonds that the PLOM contained false or misleading material statements or omissions. |
| R. Doc. 33, ¶ 43 (emphasis in original). | R. Doc. 102-3, ¶¶ 130, 132-33. |

11

Because the proposed second amended complaint does not contain new allegations, or broaden the scope of the Plaintiff's current allegations, the Court concludes that this factor weighs against a finding of good cause.

### 3. Potential Prejudice in Allowing the Amendment

The Plaintiff also fails to address the potential prejudice in allowing it to file a second amended complaint. Instead, the Plaintiff asserts that the proposed second amended complaint does not add any additional parties or raise substantially new issues.

The Defendant argues that allowing the Plaintiff to file a second amended complaint will prejudice it. The Defendant contends that under the Scheduling Order's August 9, 2011 dispositive motion deadline, it would be barred from challenging the new claims in the second amended complaint by way of motion practice. The Defendant also contends that under the Scheduling Order's August 25, 2011 discovery deadline, it would be unable to propound additional discovery regarding the new claims in the second amended complaint. Thus, granting the Plaintiff leave to file a second amended complaint would prejudice the Defendant in its defense of this lawsuit.

The Court finds that allowing the Plaintiff leave to file a second amended complaint at this stage of the litigation would not prejudice the Defendant. Under the Scheduling Order, all dispositive motions were to be filed and served in sufficient time to permit hearing no later than August 25, 2011. Thus, any dispositive motions were required to be filed no later than August 10, 2011, the same day the Plaintiff's Rule 15 Motion to Amend and Supplement Complaint was noticed for submission. However, the Plaintiff's filing of a motion for leave to amend does not prevent the Defendant from seeking leave of Court to file a dispositive motion after the dispositive motion deadline.

Further, under the Scheduling Order all discovery was to be completed no later than August 25, 2011. Completion of discovery means that the responses and any related discovery disputes must be resolved by the deadline as well. However, when the Defendant received the Plaintiff's April 2011 discovery responses, it was put on notice of the allegations and facts now included in the Plaintiff's proposed second amended complaint. Thus, the Defendant had sufficient time from April 2011 until the discovery deadline to issue discovery requests related to those allegations and facts.

The Court concludes that granting the Plaintiff leave to file a second amended complaint would not prejudice the Defendant in its defense of this lawsuit. This factor weighs in favor of a finding of good cause.

### 4. The Availability of a Continuance to Cure Prejudice

The Plaintiff also fails to address the availability of a continuance to cure any prejudice to the Defendant. Instead, the Plaintiff asserts that the filing of this amendment will not delay the trial. The Plaintiff further asserts that the proposed second amended complaint will simplify the issues, and result in a shorter and more efficient trial.

The Defendant contends that despite the Plaintiff's representation that the filing of this amendment will not delay the trial, the Plaintiff requested the Defendant consent to continuing the trial in connection with its motion for leave. The Defendant further contends that a continuance is speculative at best because (1) the Defendant previously informed the Plaintiff that it would not consent to continue the trial date; (2) the Plaintiff has not filed a motion to continue the trial date; and (3) Judge Englehardt has already notified the parties that the trial date is firm.

The Court, in reviewing the Amended Complaint and proposed second amended complaint, concludes that the proposed second amended complaint would not likely warrant a continuance. The

Plaintiff's allegations are seemingly clarified by the proposed second amended complaint and not expanded so as to create a new legal claim for relief. Consequently, the Court finds that this factor is neutral.

The Court finds that a majority of the Fed.R.Civ.P. 16(b)(4) factors weigh against a finding of good cause. Thus, the Plaintiff has failed to meet its burden under Fed.R.Civ.P. 16(b)(4). As a result, the Court need not address the more liberal standards set forth in Fed.R.Civ.P. 15(a).

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Rule 15 Motion to Amend and Supplement Complaint (R. Doc. 102)** is hereby **DENIED**.

New Orleans, Louisiana, this 26th day of September 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**