UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SCB DIVERSIFIED MUNICIPAL PORTFOLIO, ET AL. | CIVIL ACTION |
| VERSUS | NO. 09-7251 |
| CREWS & ASSOCIATES, ET AL. | SECTION "N" (4) |

## ORDER AND REASONS

Before the Court is the "**Motion for Summary Judgment**" (Rec. Doc. 112), filed by Defendant McGlinchey Stafford PLLC ("McGlinchey"). This motion is opposed by Plaintiff, Coves of the Highland Community Development District ("Plaintiff" or "the District"). (*See* Rec. Doc. 116). After considering the memoranda filed by the parties, including McGlinchey's Reply (Rec. Doc. 131), the Court rules as set forth herein.

I.   BACKGROUND

In March of 2006, MGD Partners, L.L.C. ("MGD") purchased 324 acres of real property (the "Property") in Tangipahoa Parish, Louisiana for the purpose of building a planned residential community called The Coves of the Highland (the "Project"). In order to fund a portion of the development, MGD elected to form a community development district under Louisiana law to issue bonds. The District was controlled by a Board of Supervisors (the

"Board") comprised of the three members of MGD, a professional engineer, William Bodin, and a Louisiana attorney, Rodney Cashe, who served as general counsel for plaintiff. Plaintiff retained McGlinchey to act as special counsel in connection with its organization and as bond counsel in connection with the issuance of the bonds. Plaintiff, through the signature of J.B. Guierrez, a member of the Board of Supervisors, executed an engagement letter with McGlinchey on June 28, 2006.

In an effort to fund certain infrastructure improvements for the Project, the District issued $7,695,000 in bonds titled "Coves of the Highland Community Development District, Parish of Tangipahoa, State of Louisiana Special Assessment Bonds, Series 2006" (the "Bonds"). Defendant Crews and Associates ("Crews") underwrote the Bonds and purchased the Bonds from the District. The Bonds were thereafter offered for re-purchase to SCB Diversified Municipal Portfolio, SCB California Municipal Portfolio, Short Duration New York Municipal Portfolio, and Short Duration California Municipal Portfolio ("SCB") in November of 2006 through a "Preliminary Limited Offering Memorandum" ("PLOM"), dated November 1, 2006, and a final "Limited Offering Memorandum" ("LOM"), dated November 8, 2006. The PLOM and LOM were drafted by Crews, the District, and Breazeale, Sachse and Wilson ("BSW"), as attorney for Crews.

On November 9, 2006, Plaintiff's Board met with respect to the Bond transaction. At this meeting, the Board ratified and approved the dissemination of the PLOM in connection with the offer and sale of the Bonds. SCB purchased the Bonds, and the transaction closed on November 16, 2006. As part of the Bond transaction, McGlinchey issued three opinion letters. The first, dated November 15, 2006 and addressed to Plaintiff and Regions Bank, addressed the validity

and binding effect of the Bonds, the source of payment and security for the Bonds, and the excludability of interest on the Bonds from federal and Louisiana income taxes.  The second, also dated November 15, 2006, addressed to Plaintiff, Regions Bank, and Crews, stated that McGlinchey reviewed certain portions of the LOM and that those sections contained a fair and accurate summary of certain legal provisions and instruments.  This opinion expressly excluded the section of the LOM labeled "The Development."  In the third, dated November 16, 2006 and addressed to Plaintiff, McGlinchey opined as to the formation of Plaintiff, the validity of the Bonds, Plaintiff's ability to enter into the indenture, the source of payment and security for the Bonds, and the excludability of interest on the Bonds from federal and Louisiana income taxes.

On March 9, 2009, after development of the Project had commenced, the U.S. Army Corps of Engineers ("Corps") published a Public Notice (the "Notice") entitled "Request for Information about the Former Hammond Bombing and Gunnery Range" ("HBGR") in the local Hammond newspaper.  In the Notice, the Corps announced that it had completed its Site Inspection at the HBGR and that a Draft Site Inspection Report dated December 12, 2008 had been placed in the Hammond Public Library for public reference.  The Notice revealed, among other things, that the Corps used portions of the Property from 1942 until September 1945 to provide gunnery, rocket and bombing practice for pilots.  The Corps' inspection report noted the potential for unexploded ordnance ("UXO") and munitions and explosives of concern ("MEC") on the HBGR.

On April 23, 2009, the Tangipahoa Parish Engineer notified MGD that no further building permits or approvals would be issued by the Parish until the risk of UXO and MEC contamination had been fully investigated and remediated.  As such, development of the Project

has ceased, no permits or approvals are being issued, and lots on the Property are unable to be sold.

Plaintiff defaulted on the Bonds and filed the instant suit on November 10, 2009. Plaintiff seeks to recover damages against McGlinchey for (1) legal malpractice for failure to conduct environmental due diligence, failure to obtain informed consent for the limited scope of representation it outlined in its engagement letter, and charging fees in excess of what was estimated in the engagement letter and allowed under the Attorney General's Bond Counsel Fee Schedule; (2) negligence for failure to conduct environmental due diligence; (3) negligent misrepresentation for supplying false information regarding the importance of environmental due diligence and for failure to disclose the environmental risks of developing the Property as a result of its location; and (4) breach of fiduciary duty for failure to perform environmental due diligence and for charging fees in excess of what was estimated in the engagement letter and in the District's Bond resolution.

## II.     ARGUMENTS OF THE PARTIES

McGlinchey argues that Plaintiff's claims are perempted under Louisiana Revised Statute 9:5605 because any malpractice that may have been committed by McGlinchey occurred before November 9, 2006, three years before Plaintiff's suit was filed on November 10, 2009. However, even if Plaintiff had filed its suit on time, McGlinchey asserts that Plaintiff's claims must fail because McGlinchey had no duty to perform environmental due diligence as bond counsel or under the terms of the engagement letter.

Plaintiff, on the other hand, argues that its claims are not perempted because McGlinchey's acts and omissions continued past November 9, 2006 to the closing on November

16, 2006. Plaintiff argues that its claims are valid because McGlinchey's engagement letter cannot limit the scope of representation in that McGlinchey did not consult with Plaintiff regarding the scope of the duties that it undertook in the engagement letter, in violation of several rules of professional conduct. As an attorney representing a client in connection with a commercial real estate development, McGlinchey had a duty to perform environmental due diligence, according to Plaintiff, which was not abrogated by the engagement letter. Plaintiff alleges that McGlinchey breached this duty in failing to advise Plaintiff of the importance of a Phase I Environmental Site Assessment and in failing to review the abstract of title regarding the Property. Further, Plaintiff asserts that McGlinchey negligently failed to alert Plaintiff of the fact that the PLOM contained a misleading reference to a Phase I Environmental Site Assessment.

McGlinchey argues in response that it did not limit its representation of Plaintiff in its engagement letter, but rather outlined the traditional role of bond counsel. Plaintiff has not presented evidence tending to show that environmental due diligence was within the scope of bond counsel's duty. Further, McGlinchey states that a violation of the rules cited by Plaintiff does not constitute malpractice. Finally, McGlinchey re-urges its claim that Plaintiff's claims are perempted.

### III.   DISCUSSION

#### A.   Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may demonstrate the absence of a genuine issue of material fact by "citing to particular parts of

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see also Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare*

*System, L.L.C.*, 277 F.3d 757, 764 (2001).  Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*citations omitted*).  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (*emphasis omitted*) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").  Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075.  Rather a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

B.  Analysis

1. Legal Malpractice[1]

In order to prevail on a legal malpractice claim, a plaintiff must demonstrate "1) the existence of an attorney-client relationship, 2) negligent representation by an attorney, and 3) loss caused by that negligence." *Teague v. St. Paul Fire & Marine Ins. Co.*, 974 So.2d 1266, 1272 (La. 2008) (*citing Costello v. Hardy*, 864 So.2d 129, 138 (La. 2004)).  The existence and scope of an attorney client relationship is defined by the mutual intent of the parties to the agreement. *See Hartz v. Farrugia*, No. 06-3164, 2009 WL 901767, at *3 (E.D. La. Mar. 31, 2009) (*citing Lifemark Hosp. Inc. v. Jones Walker, Waechter, Poitevent, Carrere & Denegre*, No. 94-1258, 1997 WL 33473806 at *5 (E.D. La. Nov. 13, 1997) (*citing Delta Equip. & Constr. Co. v. Royal Indem. Co.*, 186 So.2d 454, 458 (La. App. 1 Cir. 1966))).  "Such a relationship is based only upon the clear and express agreement of the parties as to the nature of the work to be undertaken by the attorney and the compensation which the client agrees to pay therefor." *Id*. (*citing Lifemark Hosp. Inc.*, 1997 WL 33473806, at *5 (*quoting Delta Equip.*, 186 So.2d at 458)).  An attorney does not create an attorney-client relationship with respect to all legal or business affairs of a client when he agrees to represent the client in a specific legal matter. *Id.*  In a legal malpractice case, "duty is defined by the attorney-client relationship." *Id.* (*citing Lifemark Hosp. Inc.*, 1997 WL 33473806, at *5 (*citing Grand Isle Campsites, Inc. v. Cheek*, 262 So.2d 350 (La.

---

[1]In addition to claims for legal malpractice and negligent misrepresentation, Plaintiff asserts claims of negligence and breach of fiduciary duty against McGlinchey.  However, because these claims must, of necessity, be based on the attorney-client relationship, they are encompassed in the Court's discussion of legal malpractice.  The parties do not address these claims in their filings, and the Court is skeptical that these claims can be maintained separate from that labeled "legal malpractice."

1972); *Delta Equip.*, 186 So.2d at 458)). "The relationship of attorney and client is more than a contract. It superinduces a trust status of the highest order and devolves upon the attorney the imperative duty of dealing with the client only on the basis of the strictest fidelity and honor." *Curb Records v. Adams & Reese, L.L.P.*, No. 98-31360, 203 F.3d 828, 1999 WL 1240800, at *4 (5th Cir. Nov. 29, 1999) (emphasis omitted) (*quoting Cattle Farm Inc. v. Abercrombie*, 211 So.2d 354, 365 (La. App. 4 Cir. 1968) (citations omitted & emphasis added)). Inherent in the attorney-client relationship is an obligation on the attorney "to exercise at least the degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality." *Id.* (*quoting Corceller v. Brooks*, 347 So.2d 274, 277 (La. App. 4 Cir. 1977)).

In order to prove negligent representation by an attorney, some plaintiffs must retain an expert witness to testify regarding the standard of care an attorney must meet in the relevant locality. *MB Industries, LLC v. CNA Ins. Co., et al.*, 52 So.3d 168, 173 (La. App. 3 Cir. 2010) (*citing Watkins v. Shepard*, 278 So. 2d at 892; *Frisard v. State Farm Fire and Cas. Co.*, 979 So.2d 494 (La. App. 1 Cir. 2007). However, in many cases, the trial court may evaluate the adequacy of an attorney's representation based on its knowledge of the standards of practice in the community without the need for expert testimony. *Id.* In some cases, the failure of the attorney to comply with the community standard of care may be so obvious as to render expert testimony unnecessary. *Id.*

Here, Plaintiff and McGlinchey established an attorney-client relationship when they executed an engagement letter dated June 28, 2006. Under the terms of the engagement letter, McGlinchey undertook to represent Plaintiff "as special counsel to [Plaintiff] in connection with its organization and establishment and also as bond counsel to [Plaintiff] in connection with the

9

proposed issuance, sale and delivery of the Bonds." (Exhibit 1 to Rec. Doc. 112, p. 1). The engagement letter outlines the scope of the engagement and the duties McGlinchey would perform as special counsel and bond counsel, including: preparing documents required to create Plaintiff; rendering legal opinions regarding the validity of the Bonds, the source of payment and security for the Bonds and the excludability of interest on the Bonds from gross income for tax purposes; preparing and reviewing documents in connection with the authorization, issuance and delivery of the Bonds, coordinating the authorization and execution of such documents and reviewing enabling legislation; assisting Plaintiff in seeking from other governmental authorities such approvals, permissions and exemptions as McGlinchey determined were necessary or appropriate in connection with the authorization, issuance and delivery of the Bonds; reviewing legal issues relating to the structure of the transaction; reviewing those sections of the PLOM and LOM involving the Plaintiff, the Bonds and the security therefore, together with such matters as are consistent with the role of bond counsel; and preparing the continuing disclosure undertaking of Plaintiff, if such undertaking is required. (*Id.*, at p. 1-2). In the engagement letter, McGlinchey stated, "During the course of the engagement, we will rely on [Plaintiff] to provide us with complete and timely information on all developments pertaining to the Bonds, including but not limited to the project and facilities to be constructed or provided with bond proceeds, timetable and cost of construction, and matters relating to security for the Bonds." (*Id.*, at p. 2).

The engagement letter clearly defines the scope of the representation contemplated between Plaintiff and McGlinchey. McGlinchey's role in the venture consisted of assisting Plaintiff in its formation under Louisiana law and in issuing bonds. As expressly stated, McGlinchey's review of the PLOM did *not* include the section regarding the development, which

is where the mention of a Phase I Environmental Site Assessment is located. McGlinchey's limited role in this transaction is further elucidated by the number of other parties employed by Plaintiff or otherwise involved in the Bond transaction, including Crews, BSW, Mr. Bodin and Mr. Cashe.

Plaintiff argues that McGlinchey violated the rules of professional conduct for attorneys by drafting an engagement letter limiting its representation of Plaintiff without obtaining informed consent to such limited representation. Plaintiff cites several rules of conduct from various sources which state that a lawyer must consult with client when narrowing his representation from what his traditional role as counsel would be.[2] In order to demonstrate a violation of these rules, Plaintiff must show that McGlinchey failed to perform some duty which is traditionally included in the role of bond counsel.

In an attempt to establish the scope of McGlinchey's duties, Plaintiff submits the expert report of Sean Rafferty, a title attorney based in New Orleans, Louisiana.[3] In his report, Mr.

---

[2] Plaintiff cites to the Third Restatement of Law Governing Lawyers by the American Law Institute, which states the client must consent if the lawyer wants "to limit a duty that a lawyer would *otherwise* owe to a client." Restatement (Third) of Law Governing Lawyers § 16(f) (emphasis added). Plaintiff also cites to a report by the National Association of Bond Lawyers Committee on Professional Responsibility entitled "The Function and Professional Responsibility of Bond Counsel." The report states that under Rule 1.2 of the Model Rules of Professional Conduct "a bond lawyer may . . . limit the scope of representation more narrowly than the *traditional bond counsel function* . . . provided the client consents after consultation with the attorney." (Exhibit 5 to Rec. Doc. 116, p. 16) (emphasis added).

[3] McGlinchey has filed a Motion in Limine (Rec. Doc. 110) seeking exclusion of Mr. Rafferty's report based on Plaintiff's alleged violation of Rule 26 in connection with the disclosure of the report. Plaintiff disclosed the report less than a week after the due date. While the report did not include all information about Mr. Rafferty required by Rule 26, Plaintiff alleges that McGlinchey is familiar with Mr. Rafferty as he formerly worked with Mr. Beauchamp, the McGlinchey attorney that worked on the Bond transaction. Based on the precedent set by the Fifth Circuit in *Betzel v. State Farm Lloyds*, the Court does not believe

Rafferty opines that "an attorney representing a client intending to conduct a Louisiana commercial real estate development project has a professional duty to advise his client of the acute need to obtain appropriate environmental reviews of the project property." (Exhibit 10 to Rec. Doc. 116, p. 1). However, Mr. Rafferty does not address McGlinchey's duties to Plaintiff specifically or the role of bond counsel generally. Rather, Mr. Rafferty asserts that *any* attorney representing, in *any* capacity, a client who is engaged in developing real estate must advise a client about the need for environmental reviews. Based on the Court's familiarity with the standard of practice in this community, this broad contention cannot be sustained. For instance, a tax attorney who works only on tax issues surrounding a real estate development would certainly have no obligation to advise the client of the need for environmental studies of the property. Mr. Rafferty states that he has experience representing clients in real property acquisitions and that he works as a title attorney. In these roles, such an attorney would most likely have a duty to advise a client regarding environmental issues, but this duty does not extend to every attorney who comes into contact with a client developing real estate.

In his report, Mr. Rafferty references an uncited case called *Keywell* for the contention that an attorney representing a client in connection with the client's acquisition of real property committed malpractice by failing to obtain sufficient environmental reviews. While the Court has not located this uncited case, it does not help Plantiff's case. McGlinchey did not represent Plaintiff in connection with the Plaintiff's acquisition of the property in question, but rather long after Plaintiff had acquired the property. While the duties defined in Mr. Rafferty's report often

---

exclusion would be proper in this instance. 480 F.3d 704 (5th Cir. 2007). As such, the Court will consider Mr. Rafferty's testimony/report in the disposition of this motion.

do apply to attorneys representing developer clients, it does not speak specifically to the duties of McGlinchey as bond counsel.

Plaintiff also cites a treatise by Peter S. Title entitled "Louisiana Real Estate Transactions" for the general proposition that Louisiana attorneys customarily advise clients regarding the importance of environmental assessments when the client is engaged in a real estate development project. Peter S. Title, "Louisiana Real Estate Transactions," La. Practice Series Vol. 2 §20:22-36 (2010-2011). This report does not provide support for Plaintiff's position. The report states that "potential purchasers should conduct an investigation." Id. at. §20:30. Plaintiff was not a "potential purchaser." As McGlinchey did not represent Plaintiff at the time of the acquisition of the property, it did not breach any transactional duty identified by Mr. Title.

On the other hand, McGlinchey submits the expert report of M. Jane Dickey, an attorney with experience in municipal finance who served as President of the National Association of Bond Lawyers, stating that environmental issues are outside the scope of bond counsel's traditional role in municipal finance transactions such as the one at issue herein.[4] Based on Ms. Dickey's testimony and the Court's knowledge of standards of practice observed in this community, the Court finds that Plaintiff has failed to show that environmental issues were within the scope of McGlinchey's duty as bond counsel. Because environmental due diligence was not in the scope of McGlinchey's particular duty to Plaintiff, McGlinchey did not commit

---

[4]Plaintiff has filed a Motion in Limine (Rec. Doc. 123) seeking to exclude Ms. Dickey's testimony on the basis that Ms. Dickey is not licensed to practice law in Louisiana and, therefore, she cannot speak to the standard of practice observed by bond attorneys in this community. Be that as it may, however, Plaintiff points to nothing in Ms. Dickey's report that is incorrect or inconsistent with the role of bond counsel in this community, nor does Plaintiff submit any opposing or countervailing evidence regarding the role of bond counsel. Rather, Plaintiff makes a distinction of no consequential impact in an effort to exclude Ms. Dickey's testimony.

legal malpractice by reviewing the PLOM and failing to notice the mention of a Phase I Environmental Site Assessment.

    2. Negligent Misrepresentation

While Plaintiff does not address its negligent misrepresentation claim in its opposition to McGlinchey's Motion for Summary Judgment, the Court nonetheless examines the validity of this claim. In order to establish a prima facie claim for negligent misrepresentation, Plaintiff must demonstrate that (1) McGlinchey had a legal duty to supply correct information to Plaintiff; (2) McGlinchey breached this duty; and (3) Plaintiff was damaged as a result of justifiable reliance on McGlinchey's misrepresentations. *Kadlec Medical Center v. Lakeview Anesthesia Associates*, 527 F.3d 412, 418 (5th Cir. 2008) (*citing Brown v. Forest Oil Corp.*, 29 F.3d 966, 969 (5th Cir. 1994); *In re Ward*, 894 F.2d 771, 776 (5th Cir. 1990); *Pastor v. Lafayette Bldg. Ass'n*, 567 So.2d 793, 796 (La. App. 3 Cir. 1990); *Cypress Oilfield Contractors, Inc. V. McGoldrick Oil Co.*, 525 So.2d 1157, 1162 (La. App. 3 Cir. 1988)).

Any claim against McGlinchey for negligent misrepresentation based on the contents of the PLOM must fail because McGlinchey did not draft or issue the PLOM. However, even if McGlinchey were liable for misrepresentations in the PLOM, for the reasons articulated in the Court's Order and Reasons granting BSW's Motion for Summary Judgment in No. 09-7351 (Rec. Doc. 237), McGlinchey cannot be held liable for negligent misrepresentation based on the alleged misrepresentations contained in the PLOM because Plaintiff has not shown that it was damaged as a result of reliance on the representations contained in the PLOM.

Plaintiff also claims that McGlinchey made negligent misrepresentations in its opinion letters issued in connection with the closing of the sale of the Bonds, which took place on

November 16, 2006.  Plaintiff alleges in its complaint that McGlinchey endorsed a section of the LOM containing information regarding "Real Estate Development Risks Affecting Lot Sales," which states that "[a]pproval is required from various public agencies . . . in accordance with applicable zoning, land use and environmental regulations."  (Exhibit 5A to Rec. Doc. 112, p.26).  McGlinchey's opinion letters do not specifically endorse that section of the LOM, however, even if they had, nothing in this section misrepresents information regarding the Project; the section merely states that the Project is subject to environmental laws, which is undeniably true.  After review of the McGlinchey opinion letters in light of the arguments made and pleadings filed, the Court has not located any negligent misrepresentation made by McGlinchey in the opinion letters.

## IV. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that McGlinchey's **"Motion for Summary Judgment" (Rec. Doc. 112)** is **GRANTED**.

New Orleans, Louisiana, this 4th day of <u>January</u> 2012.

_____
**KURT D. ENGELHARDT**
**United States District Judge**